# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CIVIL ACTION NO. 3:16CV-00642-JHM

KING JOSEPH X                                                              PLAINTIFF

V.

LIBERTY MUTUAL GROUP, INC.                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Liberty Mutual Group, Inc., for partial summary judgment on Plaintiff's claims for punitive damages [DN 28] and a motion by Plaintiff, King Joseph X, for partial summary judgment on his claim for underinsured motorist benefits against Defendant [DN 31]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

On May 9, 2015, Plaintiff was injured in a car accident when the car in which he was riding was hit by another vehicle. At the time of the accident, Plaintiff was the passenger in a vehicle that was insured under a policy of insurance issued by Defendant that contained underinsured motorist (UIM) coverage. Plaintiff was treated at Jewish Hospital with complaints of head, neck, and back pain. Plaintiff received PIP benefits paid by Defendant. Plaintiff settled his claim against the driver that caused the accident and his insurance company, Nationwide, for the policy limits of $25,000. Plaintiff then made a demand for the underinsured motorist coverage "policy limits" against Defendant on February 16, 2016.

After reviewing Plaintiff's medical records, Defendant denied the UIM claim. According to Defendant, the medical records indicate that seven months prior to the accident, Plaintiff had been involved in a separate motor vehicle accident where he was diagnosed with a head injury

and cervical strain. Defendant determined that the second accident did not significantly change Plaintiff's medical condition and was not a causative factor for the medical expenses that were incurred after the PIP benefits ($10,000) were exhausted.

As a result of the denial of the UIM benefits, Plaintiff filed suit in Jefferson Circuit Court alleging breach of contract and seeking payment of UIM benefits against Defendant. Defendant filed an answer in which it acknowledged issuing the policy in question that included UIM coverage, but denied Plaintiff's claims for damages. Defendant timely removed the matter to federal court. The Court denied Plaintiff's motion to remand finding that when Plaintiff had been asked to specify the amounts claimed as damages against the Defendant, he responded with an amount of $469,478.12. [Order, DN 13]

Plaintiff now moves for partial summary judgment on the issue of liability, and Defendant moves for partial summary judgment on Plaintiff's claim for punitive damages.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some

2

"metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. UIM Benefits [DN 31]

Plaintiff moves for partial summary judgment on the issue of liability of the UIM benefits claim. Plaintiff argues that Defendant conceded that Plaintiff is entitled to coverage under the UIM policy at issue. Plaintiff maintains that Defendant will not call any witnesses to challenge liability or to criticize Plaintiff's treatment or medical care. According to Plaintiff, the only issue in dispute at trial is the amount of damages the Plaintiff is entitled to under Defendant's UIM policy. As a result, Plaintiff requests the Court enter a judgment stating the following: (1) Plaintiff is covered under the Liberty Mutual policy of insurance and is entitled to UIM benefits; (2) the only issue at trial will be one of damages; (3) the medical bills of $19,478.12 are reasonable and medically necessary and a judgment for same is entered; and (4) the only issues to be decided at the trial of this matter are fair and reasonable amounts for pain and suffering and lost wages. In response, Defendant argues that there are genuine disputes of fact as to the UIM benefits claim.

In this action, Plaintiff seeks compensation under Liberty Mutual's underinsured motorist coverage. KRS § 304.39-320(1) defines an "underinsured motorist" as a party with motor vehicle liability insurance coverage in an amount less than a judgment recovered against that party for damages resulting from a motor vehicle accident. If the claimant and the adverse driver's liability insurance carrier agree to a settlement, and the amount paid will not fully compensate the claimant for damages sustained in the accident, then the claimant is to provide his own insurance carrier with notice of the proposed settlement. The claimant's carrier has the option to substitute payment of the settlement to the claimant and retain its right of subrogation against the adverse driver, or consent to the settlement. KRS § 304.39-320(3) and (4). As has happened here, if the carrier does not elect to substitute payment, then the claimant is authorized to accept payment from the adverse driver's liability insurance carrier and execute a release of the driver without prejudice to his ability to pursue underinsured motorist benefits from his own carrier. Id. The underinsured motorist insurance carrier is entitled to a credit against any damages awarded the claimant for the amount of the adverse driver's liability insurance limits, regardless of whether the full limits were paid in settlement. KRS § 304.39-320(5). Consequently, the Plaintiff will only be entitled to benefits under the Liberty Mutual's underinsured motorist coverage if the jury determines that his damages arising from the accident exceed the amount of the tortfeasor's liability coverage limit and the amount of PIP coverage. See Suddarth v. Motorists Mut. Ins. Co., 2014 WL 12726536, at *3 (W.D. Ky. Aug. 14, 2014); Progressive Max Insurance Co. v. Jamison, 431 S.W.3d 452, 457 (Ky. App. 2013).

In order to prevail on a claim for underinsured motorist benefits, the parties agree that a Plaintiff must establish each of the following elements: (1) Plaintiff incurred a physical injury caused by the motor vehicle accident; (2) at the time of the accident, Plaintiff was insured by a

policy of underinsured motorist coverage; (3) Plaintiff settled with, or obtained a judgment against, the negligent tortfeasor at least 30 days after providing the underinsured motorist insurer with written notice of the proposed settlement; (4) the amount of Plaintiff's damages exceeded the amount of the tortfeasor's liability insurance coverage; and (5) Plaintiff's damages were a direct result of the subject accident.

It is undisputed that Plaintiff was the passenger in a vehicle involved in an automobile accident, Plaintiff was insured for UIM coverage as a passenger in a vehicle insured by Defendant, and that Plaintiff settled with the tortfeasor for the policy limits of the liability insurance. It is also undisputed that the policy limits of the UIM coverage at issue is $25,000 per person and $50,000 per occurrence. A review of Defendant's response to the motion for summary judgment and its pretrial memorandum reflects that Defendant challenges (1) that the May 9, 2015, accident was caused by the negligence of the driver of the other vehicle; (2) the Plaintiff's allegations that he incurred injuries in the May 9, 2015, accident that required medical services valued at $19,479.12 (Defendant contends that the Plaintiff's reasonable and necessary medical expenses were no more than $5,239.30); (3) the Plaintiff's allegations that he incurred injuries in the May 9, 2015, accident that caused him pain and suffering and to be unable to work and earn income; and (4) that Plaintiff notified Defendant by certified or registered mail at least 30 days before agreeing to settle his liability claim with the tortfeasor's insurer.

**1. Liability under the UIM Policy**

In his motion for summary judgment, Plaintiff argues that "Defendant has accepted liability by accepting that there was a valid UIM policy that the Plaintiff is entitled to coverage under." (Motion at 1.) Contrary to Plaintiff's argument, while Defendant acknowledges that Plaintiff is insured for UIM coverage, Defendant contests that it owes any UIM benefits under

the policy arguing that Plaintiff was fully compensated for his personal injury claim by the Nationwide settlement. Additionally, as made clear by Defendant's pretrial memorandum and jury instructions, Defendant also challenges that the May 9, 2015, accident was caused by the negligence of the driver of the other vehicle. Under Kentucky law, "the liability of the tortfeasor and the amount of damages sustained are elements that must be established in measuring the UIM carrier's obligation" under the UIM policy. State Farm Mut. Auto. Ins. Co. v. Riggs, 484 S.W.3d 724, 728–30 (Ky. 2016). In the present case, the Plaintiff "must prove the extent of the tortfeasor's liability in order to claim UIM benefits." Riggs, 484 S.W.3d at 730. See also Ray v. Encompass Indem. Co., 2017 WL 4782681, at *1 (W.D. Ky. Oct. 23, 2017). A valid UIM policy does not entitle an insured to coverage absent satisfaction the elements set forth above.

**2. Extent of Injury and Damages**

Plaintiff maintains that there is no dispute that the accident caused the Plaintiff's injuries. Plaintiff contends that Kentucky law requires a defendant to produce expert testimony to rebut evidence of causation and to avoid summary judgment on this issue. The Court disagrees.

The Plaintiff must demonstrate causation in order to establish his UIM claim. In the present case, as conceded by Plaintiff, the issue of causation is not so apparent that a lay jury would "have no difficulty in recognizing it" apart from medical expert testimony. "Kentucky law usually requires expert or medical testimony to establish that an incident legally caused a medical injury." Blair v. GEICO Gen. Ins. Co., 917 F. Supp. 2d 647, 657 (E.D. Ky. 2013)(quoting Lacefield v. LG Electronics, Inc., 2008 WL 544472 at *3 (E.D. Ky. 2008). In support of his claim, Plaintiff intends to submit the expert opinion of his treating physician, Dr. Gregory Bronner, to offer the opinion regarding the injuries Plaintiff suffered as a result of the accident and the opinion that Plaintiff's pre-existing injuries were exacerbated by the accident.

However, contrary to Plaintiff's argument, a "[d]efendant need not prove another cause, he only has to convince the trier of fact that the alleged negligence was not the legal cause of the injury." Sakler v. Anesthesiology Assocs., P.S.C., 50 S.W.3d 210, 214 (Ky. App. 2001)(quoting Wilder v. Eberhart, 977 F.2d 673, 676-677 (1st Cir. 1992)). A defendant may do this through expert testimony or cross-examination of Plaintiff and Plaintiff's expert. Here, supported by previous medical records and the deposition of Plaintiff and his treating physician, Defendant argues that some of the medical expenses and injuries claimed by Plaintiff are not the result of the May 2015 accident, but instead a pre-existing injury. Defendant represents it will present evidence on this issue through the cross examination of Plaintiff's witnesses, including Plaintiff and Dr. Bronner, as well as the introduction of exhibits, including Plaintiff's certified medical records. Thus, the jury will be called upon to determine which medical bills and which injuries are attributable to the May 2015 car accident.

### 3. Settlement with Liability Insurer

Whether Plaintiff's settlement with the liability insurer fully satisfied Plaintiff's claim for personal injuries shall be decided by the Court after the jury determines the extent of the Plaintiff's injuries and damages.

### 4. Notice

Plaintiff maintains that it provided Defendant notice of the proposed settlement of $25,000 with the tortfeasor's insurance company Nationwide, and the Defendant consented to the settlement and waived its right of subrogation. In response, Defendant challenges that Plaintiff satisfied the notice requirement. Defendant maintains that that Plaintiff settled with the tortfeasor without giving Defendant an opportunity to accept or reject the settlement, as required by KRS § 304.320(3). Specifically, Defendant argues that unless Plaintiff produces evidence

that he complied with KRS § 304.39-320(3) by providing Liberty Mutual with written notice of the proposed settlement by certified or registered mail at least 30 days before finalizing the settlement, he will not be entitled to recover any underinsured motorist benefits from Defendant. See Malone v. Kentucky Farm Bureau Mut. Ins. Co., 287 S.W.3d 656, 659 (Ky. 2009). Specifically, KRS § 304.39-320(3) provides that "[i]f an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of thirty (30) days to consent to the settlement or retention of subrogation rights." KRS § 304.39-320. See also Coots v. Allstate Insurance Co., 853 S.W.2d 895 (Ky. 1993) which was codified in KRS § 304.39-320. Defendant argues that Plaintiff settled with the tortfeasor without giving Defendant an opportunity to accept or reject the settlement, as required by KRS § 304.320(3).

In reply, Plaintiff submits an April 6, 2016, email from Lee Holycross, UIM claim resolution specialist for Defendant, to Plaintiff's counsel asking for confirmation on whether a Coots letter had been sent. [DN 35-1]. On June 27, 2016, Lee Holycross emailed counsel for Plaintiff and stated, "Liberty Mutual is waiving its subrogation rights. Go ahead and accept Nationwide's offer." [DN 35-2]. Plaintiff represents that he then signed a release and settled with the tortfeasor's insurance company after Defendant specifically waived its subrogation rights. In light of these emails, the Court doesn't fully understand Defendant's position on this matter. The emails appear to suggest that Liberty Mutual in fact waived its subrogation rights. The Court will discuss this issue with the parties at the pretrial conference.

For these reasons set forth above, the Court finds that genuine disputes of fact exist in this matter, and summary judgment is not proper.

### B. Punitive Damages [DN 28]

Defendant moves for partial summary judgment on Plaintiff's claim for punitive damages. In response, Plaintiff submits that he previously filed his damage itemization indicating that he would not seek punitive damages at the underlying trial of this matter. Plaintiff concedes the claim for punitive damages on the underlying claim [DN 30]. Plaintiff indicates that in the event of success at the trial of the claim for UIM benefits, Plaintiff will bring a bad faith action against Defendant where he will seek punitive damages at that time.

Given Plaintiff's response, the motion for partial summary judgment on Plaintiff's claim for punitive damages is granted.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Liberty Mutual Group, Inc., for partial summary judgment on Plaintiff's claims for punitive damages [DN 28] is **GRANTED**.

**IT IS FURTHER ORDERED** that motion by Plaintiff, King Joseph X, for partial summary judgment on his claim for underinsured motorist benefits against Defendant [DN 31] is **DENIED**.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

February 1, 2018

cc: counsel of record